DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CLEVELAND CLINIC FLORIDA HEALTH SYSTEM NONPROFIT CORPORATION** and **CLEVELAND CLINIC FLORIDA,**
Appellants,

v.

**ANDREA S. ORIOLO,** as Personal Representative for the
**ESTATE OF SAVERIO SASSO,**
Appellee.

No. 4D22-1398

[January 25, 2023]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michele Towbin-Singer, Judge; L.T. Case No. CACE19026017.

Marc J. Schleier and June G. Hoffman of Fowler White Burnett, P.A., Miami, for appellants.

Philip D. Parrish of Philip D. Parrish, P.A., Miami, and Diana Santa Maria of the Law Offices of Diana Santa Maria, P.A., Fort Lauderdale, for appellee.

KLINGENSMITH, C.J.

Appellants, Cleveland Clinic Florida Health System and Cleveland Clinic Florida, appeal a non-final order granting appellee's motion to amend a wrongful death medical malpractice complaint to assert a claim for punitive damages. We reverse because appellee failed to satisfy the requirements to establish entitlement to assert a claim for punitive damages against a corporation pursuant to section 768.72(3)(b), Florida Statutes (2019).

Appellee, as personal representative of the decedent's estate, filed the underlying wrongful death action against appellants. The complaint now under review alleges that the decedent was admitted to the hospital through the emergency room, and when his condition deteriorated, health care providers performed an intubation that caused fatal brain injuries. Appellee's suit did not include as defendants the health care providers,

even though she contends they were grossly negligent in providing the decedent care and treatment during the intubation. Instead, appellee brings these claims against appellants for vicarious liability as the health care providers' employer.

Appellee subsequently sought leave of the court to assert a claim for punitive damages against appellants for the health care providers' alleged gross negligence. Appellee further asserts appellants actively and knowingly participated in such conduct; knowingly condoned, ratified, or consented to such conduct; and/or themselves engaged in conduct that constituted gross negligence that contributed to the decedent's death. To support this claim, appellee relied on comments purportedly made by the hospital's chief medical officer following the decedent's death and arguments related to appellants' general failure to follow current policy procedures, make changes to their policies, and use the incident as a teaching opportunity for its interns, residents, and fellows.

Following a hearing, the trial court allowed appellee to amend her complaint to add the punitive damages claim. In its order, the trial court identified the health care providers' specific acts which the court concluded indicated a conscious disregard for the decedent's safety and implicated the hospital as vicariously liable for those actions. The trial court ruled that the proffered evidence showed the doctors and other health care providers were grossly negligent by—contrary to the emergency room physician's recommendation—placing the decedent on a floor level with fewer observation checks, failing to attend to the decedent during the various emergency calls, and beginning intubation without proper supervision, causing the delayed intubation that led to the decedent's death. To support the punitive damages claim against the hospital, the trial court found a jury could conclude that the hospital's response to the incident reflects its "condonement and ratification of the [provider's] gross negligence."

We review de novo the trial court's purely legal ruling that plaintiff made a "reasonable showing" under section 768.72 to recover punitive damages. *Holmes v. Bridgestone/Firestone, Inc.*, 891 So. 2d 1188, 1191 (Fla. 4th DCA 2005); *see also Grove Isle Ass'n, Inc. v. Lindzon*, 350 So. 3d 826, 829 (Fla. 3d DCA 2022). [1]

---

[1] Previously, certiorari review was the sole avenue for determining whether the procedural requirements of the statute governing the pleading of punitive damages claims had been followed. *Strasser v. Yalamanchi*, 677 So. 2d 22, 23 (Fla. 4th DCA 1996) (citing *Globe Newspaper Co. v. King*, 658 So. 2d 518, 520 (Fla. 1995)). A recent amendment to Florida Rule of Appellate Procedure 9.130

We reverse for two reasons. First, the proffered evidence at the hearing failed to show that the health care providers involved were grossly negligent. Second, neither the complaint nor the proffered evidence demonstrated *how* appellants' actions before or during decedent's treatment ratified or approved the health care providers' alleged negligent conduct. § 768.72(3)(b), Fla. Stat. (2019).

Section 768.72(1), Florida Statutes (2019), provides that "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Subsection (2) adds that "[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds the defendant was personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. (2019). This case concerns the latter, defined in the statute as conduct "so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b), Fla. Stat. (2019).

Pertinently, subsections (3)(a)–(c) provide three independent grounds to impose punitive damages against an employer, principal, corporation, or other legal entity. Subsection (b) permits those damages where the "officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct[.]" § 768.72(3)(b), Fla. Stat. (2019). As the Florida Supreme Court recognizes, punitive damages are reserved for truly "culpable conduct," and the requisite level of negligence for those damages is "equivalent to the conduct involved in criminal manslaughter." *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016); *accord Naso v. Hall*, 338 So. 3d 283, 289 (Fla. 4th DCA 2022). Such conduct must be "so outrageous in character, and so extreme in degree . . . [that] the facts [of the case] to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Payton Health Care Facilities, Inc. v. Estate of Campbell By & Through Campbell for & on Behalf of Campbell*, 497 So. 2d 1233, 1240 (Fla. 2d DCA 1986) (quoting *Restatement (Second) of Torts*, § 46 (1965)) (adopting this standard to support an award of punitive damages).

---

now permits nonfinal review of orders granting or denying a motion for leave to amend to assert a claim for punitive damages. Fla. R. App. P. 9.130(a)(3)(G); *In re Amend. to Fla. R. of App. P. 9.130*, 345 So. 3d 725, 726 (Fla. 2022).

Appellee did not proffer any evidence to demonstrate that the *health care providers'* conduct amounted to "gross negligence" under section 768.72(2) as opposed to ordinary negligence. *See, e.g., Curry v. Cape Canaveral Hosp.* 426 So. 2d 64, 65 (Fla. 5th DCA 1983) (affirming summary denial of punitive damages because the record lacked basis to conclude doctor or hospital was grossly negligent or acted with malice or fraud). Appellee's proffered evidence provided no reasonable basis for recovery of punitive damages, which are reserved "to 'express society's collective outrage.'" *KIS Grp., LLC v. Moquin*, 263 So. 3d 63, 65–66 (Fla. 4th DCA 2019) (quoting *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 708 (Fla. 4th DCA 2008)). Allegations of misfeasance or malfeasance, or breaches of a professional standard of care, cannot without more be converted into a claim for punitive damages simply by labelling them as "grossly" negligent. *See Weller v. Reitz*, 419 So. 2d 739, 741 (Fla. 5th DCA 1982) (distinguishing simple negligence, in which a reasonable person would know conduct might result in injury, with gross negligence, which is "a conscious and voluntary act or omission [and] is likely to result in grave injury").

Even assuming appellee's proffered evidence demonstrated gross negligence by the health care providers, which it did not, the trial court further erred in finding that a jury could reasonably conclude that appellants ratified or condoned that negligence to subject it to punitive damages. Generally, "[b]efore one may infer that a principal ratified an unauthorized act of his agent, the evidence must demonstrate that the principal was [f]ully informed"—beyond having simple constructive knowledge—"and that he approved of the act." *Bach v. Fla. State Bd. of Dentistry*, 378 So. 2d 34, 36 (Fla. 1st DCA 1979). Further, it has been long-held that when a party seeks to hold a principal liable on ratification grounds, "it must be shown that he ratified upon full knowledge of all material facts, or that he was willfully ignorant . . . ." *Kearney v. Kearney*, 129 So. 3d 381, 387 n.10 (Fla. 1st DCA 2013) (quoting *Bach*, 378 So. 3d at 37); *Aerovias Nacionales De Colombia, S.A. v. Tellez*, 596 So. 2d 1193, 1195 (Fla. 3d DCA 1992) (concluding there can be no recovery of punitive damages where there is no showing that management "authorized, participated in, consented to, or ratified" its employees' conduct); *see also Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1194 (1992) (finding a hospital's failure to reprimand or punish its nurses for conduct which led to the decedent's death, standing alone, was insufficient to support a finding of ratification*); cf. Corrigan v. Methodist Hosp.*, 869 F. Supp. 1208, 1213 (E.D. Pa. 1994) (allowing punitive damages claim based on ratification to proceed where a physician sought and received approval to use an experimental device in surgery without the patient's consent).

In finding sufficient evidence of ratification, the trial court relied exclusively on conduct that post-dated the health care providers' actions and the decedent's treatment and death. However, actions taken after the happening of a tortious act are not admissible on the issue of punitive damages, nor can those subsequent actions form the basis for bringing such a damage claim. *See Jones v. Alayon*, 162 So. 3d 360, 365–66 (Fla. 4th DCA 2015) (finding that evidence of post-accident bad acts can improperly inflame the jury and incite in them the desire to punish the defendant even when no punitive damages were sought).

Appellee acknowledges this flaw in both her pleading and proffer, yet without citation to any controlling authority, argues that "after the fact" evidence can constitute evidence of ratification, condonement, or consent sufficient to support vicarious liability for punitive damages. We disagree. Here, appellee's allegations of post-injury events—including a physician's post-death comments, failure to preserve "evidence," failure to report or properly investigate the death, and failure to conduct remedial training—do not demonstrate that appellants ratified or condoned the providers' conduct by its pre-injury actions.

In sum, punitive damages are awarded to punish wrongdoers and to deter them from committing similar bad acts in the future. *See Grove Isle,* 350 So. 3d at 829–30; *Blundell v. R. J. Reynolds Tobacco Co.,* 324 So. 3d 1014, 1016 (Fla. 1st DCA 2021) (citations omitted). Section 768.72(3)(b) requires appellee to satisfy a heightened burden to seek punitive damages against the hospital for its conduct. Appellee's proffered evidence does not meet that standard. *See Grove Isle,* 350 So. 3d at 832 (noting the absence of allegations or record evidence showing even simple negligence by the association showed plaintiff failed to meet the heightened evidentiary standard for imposition of punitive damages on an employer); *Fla. Power & Light Co. v. Dominguez,* 295 So. 3d 1202, 1206 (Fla. 2d DCA 2019) (reversing punitive damage award where employee was not a "managing agent," and even if he was, plaintiff did not demonstrate either his or utility company's willful or malicious action equivalent to criminal manslaughter); *Tallahassee Mem'l Healthcare, Inc. v. Dukes*, 272 So. 3d 824, 826 (Fla. 1st DCA 2019) (quashing order permitting amendment where motion failed to allege or cite evidence that corporate management knowingly condoned, ratified, or consented to supervisor's actions).

Accordingly, we reverse the order under review and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

5

GROSS and KUNTZ, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***